THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PATTIJO DANIELS and GARY DANIELS, for themselves and as parents of C.D., a minor, <br><br> Plaintiffs, <br><br> v. <br><br> NORTHSHORE SCHOOL DISTRICT, <br><br> Defendant. | CASE NO. C20-1041-JCC <br><br> ORDER |

This matter comes before the Court on the parties' cross motions for summary judgment on Plaintiffs' appeal of an Administrate Law Judge's ("ALJ") order made pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C § 1400 *et seq.* (Dkt. Nos. 1, 20, 24.) The ALJ found that Defendant did not violate the IDEA and did not deny C.D. a free appropriate public education ("FAPE"). (Dkt. No. 1-1 at 21.) Having thoroughly considered the parties' briefing and the relevant record, and considering oral argument unnecessary, the Court GRANTS summary judgment to Defendant and AFFIRMS the ALJ's order.

I.  **BACKGROUND**

Plaintiffs are the parents of a student ("C.D.") who previously attended Defendant's

1  Sunrise Elementary School.[1] (*See* Dkt. No. 1 at 2.) Plaintiffs argue Defendant denied C.D. a
2  FAPE when it allegedly (a) conducted a deficient special education evaluation, (b) refused to
3  provide Plaintiffs copies of the standardized testing protocol Defendant utilized, and (c) created
4  an inadequate individualized education program ("IEP") based on Defendant's testing and
5  evaluations of C.D. (*Id.* at 8–9.)

   According to the administrative record, in October 2017, when C.D. was in the fourth
7  grade, Plaintiffs requested a special education evaluation[2] to consider C.D.'s "spelling" and
8  "written expression." (Dkt. No. 22-1 at 195.) In response, Defendant also evaluated C.D.'s math
9  and reading performance, and his classroom performance; it also reviewed C.D.'s previous
10 evaluation records, including Dr. Beau Reilly's independent psychological evaluation from
11 January 2017. (*See id.* at 171–92.) Based on this analysis, Defendant determined that C.D.
12 qualified for special education for written expression and math calculation. (*Id.* at 171–72.)

   Defendant requested a meeting with Plaintiffs to discuss the evaluation so they could
14 proceed with developing an IEP. (Dkt. No. 21-3 at 40–41.)[3] Plaintiffs initially declined,
15 requesting instead to first review the standardized testing protocols before discussing evaluation
16 results. (Dkt. No. 22 at 135–36.) On December 7, 2017, Plaintiff Pattijo Daniels met with the
17 school psychologist to do just that. (*Id.*) Rather than agreeing to then discuss the evaluation
18 results, Ms. Daniels again requested copies of the standardized testing protocols, which

---

[1] C.D. attended Sunrise between September 2016 and November 2016 during his third-grade year, (Dkt. No. 21-3 at 11), and from September 2017 until April 2018 during his fourth-grade year, when Plaintiffs placed him in private school, (Dkt. No. 22-1 at 239).

[2] Plaintiffs previously requested multiple special education evaluations of C.D. (*See* Dkt. No. 22 at 134–36.) The resulting determinations are not before this Court. (*See generally* Dkt. No. 21-2 at 25–26 (summary of issues addressed by the ALJ at the due process hearing at issue in this matter).)

[3] Before developing an IEP, a student's parent and qualified professionals determine whether the student is eligible based on the evaluation and assessments. Wash. Admin. Code § 392-172A-03040(1)(A). Furthermore, an official determination of a specific learning disability requires a parent to participate in the evaluation group. Wash. Admin. Code § 392-172A-03050.

Defendant refused to provide, citing copyright limitations and the need to maintain the integrity of the testing regime. (*See* Dkt. No. 21-3 at 58–63.) However, Defendant did offer to send the testing protocols to a qualified outside provider identified by Plaintiffs who could interpret the results while maintaining the security of the testing protocols, but Plaintiffs did not pursue this option. (*See id.* at 63.)

At an impasse, Plaintiffs requested that Defendant create an IEP without their presence and input, which Defendant refused to do. (*See* Dkt. No. 22-1 at 19–20.) On April 17, 2018, Plaintiffs and Defendant finally met to discuss the evaluation. (*See* Dkt. No. 21-3 at 99.) The IEP process then proceeded, and on May 15, 2018, Plaintiffs met with Defendant and a third-party facilitator about C.D.'s proposed IEP for written expression and math calculation. (*See* Dkt. No. 21-3 at 128–31, 138–39.) Plaintiffs consented to an initial special education placement shortly thereafter. (*Id.* at 147.) However, C.D. never utilized the placement because Plaintiffs elected to keep him in private school. (*Id.* at 226–27.) They concurrently filed a special education due process complaint. (Dkt. No. 21-2 at 2.)

At the prehearing conference with the ALJ, the parties established the following issues for resolution:

> a. Whether the District violated the Individuals with Disabilities Education Act (IDEA) and denied the Student a free appropriate public education (FAPE) beginning November 25, 2017 through November 25, 2019, by:
>
>   i. failing to conduct an evaluation of the Student in the areas of concern of math, reading, and writing as requested by the Parent on November 24, 2017;
>   ii. failing to provide the Parent with testing data as requested between November 30, 2017 and December 31, 2017 such that the Parent could meaningfully participate in an Individualized Education Program ("IEP") meeting with the District; and
>   iii. failing to provide the Student with an IEP that was appropriate in light of the Student's circumstances.

(*Id.* at 25–26.) The ALJ found in in favor of Defendant on each issue. (*Id.* at 134.) Plaintiffs seek a review of this determination.

## II.     DISCUSSION

### A.     Standard of Review

When a party challenges an administrative decision under the IDEA, the Court "shall receive the records of the administrative proceedings;" "shall hear additional evidence at the request of a party;"[4] and, "basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). The "burden of persuasion rests with the party challenging the ALJ's decision." *L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 910 (9th Cir. 2009.) In IDEA administrative appeals, the Court does not employ the typical highly deferential standard of review of agency decisions. *See JG v. Douglas Cty. Sch. Dist.*, 552 F.3d 786, 793 (9th Cir. 2008). Instead, the Court gives "due weight" to the administrative proceedings and accords particular deference to decisions that are thorough, careful, impartial, and sensitive to the complexities present. *See id.*; *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1472, 1476 (9th Cir. 1993). The Court must consider the findings carefully and address the hearing officer's resolution of each material issue. *Cnty. of San Diego v. Cal. Special Educ. Hearing Off.*, 93 F.3d 1458, 1466 (9th Cir. 1996).

### B.     Analysis

Under the IDEA, states have a substantive obligation to provide a FAPE to children with disabilities. *See* 20 U.S.C. § 1412(a)(1); *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 137 S. Ct. 988, 993 (2017). To access a FAPE, an eligible student receives an IEP. *See* 20 U.S.C. §§ 1401(9), 1414(d). An IEP includes a statement of the student's academic achievement and the services that will enable the student to make progress. 20 U.S.C. § 1414(d); *Endrew F.*, 137 S. Ct. at 999. IEP eligibility is determined through evaluations initiated either by the parent

---

[4] Plaintiffs argue that the ALJ should have admitted approximately 14 exhibits that predated the November 2017 evaluation because they bear on the appropriateness of the November 2017 evaluation. (*See* Dkt. Nos. 21 at 33–44, 21-2 at 114, 27 at 2–3.) The Court has reviewed Plaintiffs' excluded exhibits, (*see generally* Dkt. Nos. 22, 22-1), and agrees with the ALJ, (*see* Dkt. No. 21 at 33–44), that these documents are not relevant to the issues presented.

or an educational agency such as the school district. *See* 20 U.S.C.§ 1414(a).

The IDEA also contains procedural requirements related to IEP evaluations, eligibility determinations, and due process. *See* 20 U.S.C. §§ 1414–15. Procedural violations amount to FAPE violations when (a) the child's right to a FAPE has been impeded, (b) when the "parents' opportunity to participate in the decisionmaking process" has been "significantly impeded," and/or (c) when the child is deprived of educational benefits. 20 U.S.C. § 1415(f)(3)(E)(ii).

### 1. Defendant's November 2017 Evaluation

Plaintiffs argue that "Defendant failed to conduct an evaluation of C.D. in the areas of concern of math, reading, and writing as requested by Parents on November 24, 2017." (Dkt. No. 20 at 5.) Plaintiffs also argue that Defendant "failed to incorporate the several Independent Educational Evaluations indicating reading as an area of disability as well as failed to incorporate recommendations indicated by these evaluations, although it referred to the Reilly Report that had identified these particular areas of issue." (*Id.* at 6.) In addition, Plaintiffs argue that the evaluation was deficient because it did not use the discrepancy model properly, and they argue that if a severe discrepancy model was properly used, "no mention of the proper use of discrepancy models or evidence-based model was mentioned or demonstrated," preventing Plaintiffs' meaningful participation in C.D.'s education.[5] (Dkt. No. 20 at 8–9.)

The ALJ found that Defendant's November 2017 Evaluation "included multiple assessments and a well-documented review of data." (Dkt. No. 21-2 at 129.) In addition, she concluded that Defendant found C.D. eligible for special education in math and written expression after "considering information from a variety of sources," and that the record shows that the Defendant did evaluate C.D. in reading. (Dkt. No. 21-2 at 129.) The Court agrees. The

---

[5] Plaintiffs raise other arguments, including that Defendant conducted an improper assessment revision regarding an audiology report and improperly put an expiration date on an independent education evaluation from the spring of 2017. (Dkt. No. 20 at 5–6.) The Court does not need to reach these claims because they are beyond scope of the three issues raised in front of the ALJ and are irrelevant to determining those issues.

November Evaluation Report incorporates multiple data points in math, reading, and writing from tests performed in January, April, and November 2017. (Dkt. No. 21-3 at 16.) Dr. Reilly's January 2017 testing results and diagnoses appear throughout the Evaluation. (*See* Dkt. No. 21-3 at 16, 30, 33, 38.) The Evaluation notes that C.D.'s reading fluency score improved over time, from 89, to 97, to 109, and that these three scores "are within the Average range." (*Id.* at 34.) While Defendant did not find C.D. eligible for services in reading, Dr. Reilly's diagnosis of "Specific Learning Disorder with Impairment in Reading" is listed in the Evaluation (*Id.* at 23, 38.)

Furthermore, Defendant references the severe discrepancy model multiple times throughout the Evaluation. (*See id.* at 20, 21, 38, 39.) School psychologist Desiree Dutt's letter to Plaintiffs, dated December 13, 2017, stated "[t]he team reviewed the discrepancy between [C.D.'s] achievement scores and his intellectual ability assessment, along with curriculum based measurements and feedback from you, outside evaluation reports, and his current teacher to determine his eligibility." (*Id.* at 15). Ms. Dutt testified that based on the discrepancy model, C.D. was eligible for services in written language and math, but not in reading. (Dkt. No. 21-1 at 311.) Because C.D.'s most recent reading results from November 2017 did not fall below the criterion score of 90 (which was identified based on Dr. Reilly's cognitive testing results), he did not show a severe discrepancy. (*See id.* at 324–25, 348–49.) Plaintiffs have not identified a failure to use or reference the discrepancy model or established that it prevented them from meaningful participation in C.D.'s education as they allege.

Therefore, the Court concludes that Defendant adequately evaluated C.D. in math, reading, and writing in the November Evaluation, and affirms the ALJ's decision on this issue.

    2. <u>Plaintiffs' Participation in the IEP Process</u>

Plaintiffs argue they were denied access to testing data, which kept them from meaningfully participating in an IEP meeting with Defendant. (*See* Dkt. No. 20 at 9–10.) What Plaintiffs really mean, though, is that they were not given physical copies of testing protocols

and student answer sheets. (*See id.* at 10.) State regulations provide parents' access rights to educational records including the ability to "request that the school district provide copies of the records containing the information if failure to provide those copies would effectively prevent the parent from exercising the right to inspect and review the records." Wash. Admin. Code 392-172A-05190(2)(b). By providing a doctor's note that referenced Ms. Daniels' "history of learning disability," Plaintiffs believe they demonstrated their need for copies of the testing protocols. (Dkt. No. 20 at 14–15.)

The ALJ found that the Defendant gave Ms. Daniels opportunities to view the data and protocols, and that she did, in fact, view the data. (Dkt. No. 21-2 at 127.) Furthermore, the ALJ found that while Plaintiffs were entitled to view testing data under state regulations, they did not show that they were entitled to physical copies. (*Id.*) The Court agrees with the ALJ's conclusion. The factual record is undisputed that Ms. Daniels viewed the testing data and protocols. (*See* Dkt. No. 27 at 5.) There is no evidence that the lack of physical copies of the testing protocols resulted in significantly impeding Plaintiffs' opportunity to participate, as required by 20 U.S.C. § 1415(f)(3)(E)(ii), to amount to a FAPE violation. Therefore, the Court affirms the ALJ's conclusion on this issue.

### 3. IEP's Adequacy

In their original motion, Plaintiffs argue that because C.D. was "thriving" in his private school placement, his IEP was deficient.[6] (*See* Dkt. No. 20 at 15–16.) Additionally, in support of their third claim, Plaintiffs argue that the Defendant should have proceeded with the IEP process

---

[6] In their reply brief, Plaintiffs also argue that the reading portion of the IEP was deficient because it failed to consider Dr. Reilly's evaluations. (Dkt. No. 27 at 6–7.) As the Court previously indicated, Defendant included Dr. Reilly's evaluations but nonetheless found C.D. ineligible for special education in reading. *See supra* Part II.B.1.

ORDER
C20-1041-JCC
PAGE - 7

when Plaintiffs refused to meet to discuss the Evaluation. (*See id.* at 15–16.)

Defendants argue that the IEP must be evaluated based on its appropriateness at the time it was developed and on its overall reasonableness. (Dkt. No. 24 at 24.) Therefore, C.D.'s progress at a private school after the IEP was developed (but never actually implemented because Plaintiffs did not re-enroll C.D. in Defendant's school) is irrelevant to the appropriateness of the IEP. (*Id.* at 27.) Similarly, the ALJ found that Plaintiffs "failed, throughout the proceedings, to identify specifically how the May 15, 2018 IEP is not reasonably calculated and appropriately ambitious in light of the Student's circumstances." (Dkt. No. 21-2 at 133.) Due to the fact that C.D. was not found eligible for special education services in reading, the ALJ rejected the argument that the IEP was deficient because it did not provide those services. (*Id.*) The ALJ ultimately concluded that the May 15, 2018 IEP "was reasonably calculated and appropriately ambitious in light of Student's circumstances." (*Id.* at 134.) The Court agrees.

The record contains sufficient evidence to affirm the ALJ's conclusion that C.D.'s May 15, 2018 IEP contained reasonable goals and services that responded to his specific academic circumstances based on multiple sources of information. C.D.'s November 2017 Evaluation indicated specific learning disabilities in the areas of written expression and math calculation. (Dkt. No. 21-3 at 21.) The May 2018 IEP contained two writing goals (one related to paragraph writing and the other to spelling) and two math calculation goals. (*Id.* at 139.) The services to be provided included 250 minutes weekly of instruction in a special education setting for math and written language and 50 minutes weekly of special education support in the general education classroom. Plaintiffs have not provided any evidence that these goals and services were not reasonable and ambitious at the time they were drafted. Indeed, the time of implementation is the appropriate point in time to be addressing the IEP's appropriateness, not subsequent progress in a different setting. *See Anchorage Sch. Dist. v. M.P.*, 689 F.3d 1047, 1058 (9th Cir. 2012).

Therefore, the Court affirms the ALJ's conclusions on the issue of the May 15, 2018

IEP's appropriateness.

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS summary judgment to Defendant and AFFIRMS the ALJ's order.

DATED this day of 25th August 2021.

_____
John C. Coughenour
UNITED STATES DISTRICT JUDGE